ROBERT S. GIANELLI, #82116
JOSHUA S. DAVIS #193187
ADRIAN J. BARRIO, #219266
GIANELLI & MORRIS, A Law Corporation
550 South Hope Street, Suite 1645
Los Angeles, CA 90071
Tel: (213) 489-1600; Fax: (213) 489-1611
rob.gianelli@gmlawyers.com
joshua.davis@gmlawyers.com
adrian.barrio@gmlawyers.com

Attorneys for Plaintiff Cheri Poe, on behalf
of herself and all others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERI POE, on behalf of herself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, <br><br> Defendants. | CASE NO.: 8:21-cv-2065 <br><br> **CLASS ACTION COMPLAINT FOR:** <br> **BREACH OF CONTRACT;** <br> **DECLARATORY RELIEF;** <br> **VIOLATION OF THE UNFAIR COMPETITION LAW** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Cheri Poe, on behalf of herself and all others similarly situated, brings this action against Defendant Northwestern Mutual Life Insurance Company ("Northwestern Mutual") as follows:

## INTRODUCTION

1. Insurance Code sections 10113.71 and 10113.72 ("the Statutes") require insurers to: (1) provide a grace period of at least 60 days for nonpayment of premium; (2) mail a notice of termination for any nonpayment of premium to the policy owner and any other person designated to receive notice of the termination within 30 days of the premium due date and at least 30 days prior to the termination date; and (3) annually notify the policy owner of the right to change or make a designee for receiving the notice. The Statutes became effective January 1, 2013 and their requirements apply regardless of whether a policy was originally issued prior to that date. *McHugh v. Protective Life Insurance Company* (2021) 12 Cal.5th 213.

2. Plaintiff became a beneficiary under two life insurance policies issued to her husband in 2001 and 2002. Her husband dutifully paid premiums under the policies for years but, due to an apparent mistake by his bank, missed his December 2017 payment. Despite the Statutes' clear mandate, Northwestern Mutual failed to observe a 60-day grace period, failed to provide the requisite notices, and terminated the policies before Plaintiff's husband unexpectedly died in late April of 2018. When Northwestern Mutual was later advised of the death and queried regarding the status of the policies, it stated that no coverage was in effect on the date of the insured's death and refused to allow a claim for the policies' benefits. Plaintiff brings this class action to remedy Northwestern Mutual's violations of the Statutes and its wrongful denial of life insurance claims for nonpayment of premium under policies issued in California prior to January 1, 2013.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction of this case based on diversity of citizenship. Plaintiff is a citizen of the State of California, Northwestern Mutual is

1

incorporated in and has its principal place of business in the State of Wisconsin, and the amount in controversy between Plaintiff and Northwestern Mutual is in excess of $75,000.00. 28 U.S.C. § 1332.

4. The Court has personal jurisdiction over the Northwestern Mutual because it has conducted business in California by insuring various persons in California and administering claims for life insurance benefits due beneficiaries in California, as alleged herein.

5. Plaintiff's claims arise out of a life insurance benefit denied in Orange County, California by Northwestern Mutual. Thus, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## THE PARTIES

6. Plaintiff Cheri Poe is an individual who, at relevant times, has resided in Orange County, California.

7. Northwestern Mutual is an insurance company licensed to do business in California and, at all relevent times, has been domiciled in Wisconsin.

## SUBSTANTIVE ALLEGATIONS

8. In 2012, Assembly Bill 1747 was enacted and created the Statutes. They became effective January 1, 2013.

9. Insurance Code section 10113.71 provides in pertinent part:

> (a) Each life insurance policy issued or delivered in this state shall contain a provision for a grace period of not less than 60 days from the premium due date. The 60-day grace period shall not run concurrently with the period of paid coverage. The provision shall provide that the policy shall remain in force during the grace period.
>
> (b)(1) A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

2

10. Insurance Code section 10113.72 provides:

(a) An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

(b) The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do so.

(c) No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination. Notice shall be given by first-class United States mail within 30 days after a premium is due and unpaid.

11. In enacting the Statutes, the Legislature intended to address the problem of long time policy owners—often seniors and/or those with health conditions—losing life insurance policies "they had spent years paying for."

Moreover, the legislative history provides several indications that the Legislature enacted the grace period and notice protections in part to protect *existing* policy owners from losing the important life insurance coverage they had spent years paying for. The Assembly and Senate materials on Assembly Bill No. 1747 (2011–2012 Reg. Sess.) include purpose and supporting argument statements like the following: "According to the author, the bill provides consumer safeguards from which *people who have purchased life insurance coverage, especially seniors, would benefit*. Under existing law, individuals can easily lose the critical protection of life insurance if a single premium is accidentally missed (even if they have been paying premiums on time for many years).

3

*McHugh v. Protective Life Insurance Company, supra,* 12 Cal.5th at 240-241.

12. Consistent with this purpose, the Statutes "appear to create a single, unified pretermination notice scheme. This scheme appears to include three components: (1) New and existing policy owners must have the opportunity to designate additional people to receive a notice of termination (§ 10113.72, subds. (a), (b)); (2) policy owners and any designees must receive notice within 30 days of a missed premium payment, and any termination for nonpayment will not be effective unless insurers send notice to these parties at least 30 days prior (§§ 10113.71, subd. (b)(1), (3), 10113.72, subd. (c)); and (3) each policy has a 60-day grace period, which lines up with the two 30-day notice windows (§ 10113.71, subd. (a))." *McHugh v. Protective Life Insurance Company, supra,* 12 Cal.5th at 240.

13. The Statutes' requirements apply to policies issued in California prior to the Statutes' January 1, 2013 effective date.

> We conclude that sections 10113.71 and 10113.72 apply to all life insurance policies in force when these two sections went into effect, regardless of when the policies were originally issued. This interpretation fits the provisions' language, legislative history, and uniform notice scheme, and it protects policy owners — including elderly, hospitalized, or incapacitated ones who may be particularly vulnerable to missing a premium payment — from losing coverage, consistent with the provisions' purpose.

*McHugh v. Protective Life Insurance Company, supra,* 12 Cal.5th at 220.

14. Additionally, "[a]n insurer's failure to comply with these statutory requirements means that the policy cannot lapse." *Thomas v. State Farm Life Insurance Company* (9th Cir., Oct. 6, 2021, No. 20-55231) 2021 WL 4596286, at *1, *citing McHugh v. Protective Life Insurance Company, supra*.

15. Northwestern Mutual has failed to comply with the Statutes for policies issued in California before 2013. When premiums have become due on or after January 1, 2013 under these policies, Northwestern Mutual has not provided a prospective 60-day grace period and has not mailed a notice of termination within 30

4

1 days of the premium due date and at least 30 days before the termination date. Additionally, Northwestern Mutual has not provided an annual notice of the right to change or make a designee for receiving the notice of termination.

16. In connection with its disregard of the requirements of the Statutes for policies issued before 2013, Northwestern Mutual has improperly denied claims for deaths under those policies, refused to allow claims to be made, or just ignored its responsibility to pay benefits for the deaths, on the basis the policies were terminated for nonpayment of premium.

17. Northwestern Mutual issued two term life insurance policies on the the life of Scott Poe: Policy No. 15874906 in the amount of $700,000 effective September 21, 2001 and Policy No. 16288790 in the amount of $400,000 effective November 3, 2002. Northwestern agreed to pay the amounts of these policies in the event of Scott Poe's death subject to the payment of premiums on their due dates.

18. Effective October 21, 2016, and after she was married to Scott Poe, Plaintiff was designated as a beneficiary under the policies along with Scott Poe's sons from a prior marriage, Zachary Poe and Jacob Poe.

19. Each policy has a "Grace Period" provision that states "[a] grace period of 31 days will be allowed to pay a premium that is not paid on its due date." The provision further states that "[i]f the premium is not paid within the grace period, the policy will terminate as of the due date."

20. Northwestern Mutual set up a Northwestern Mutual Insurance Service Account ("ISA") to process Scott Poe's monthly premiums that were to be deducted from his checking account with Citibank. Northwestern Mutual took the monthly premiums for the two policies from the ISA account on or about the 21st of each month.

21. Scott Poe paid the monthly premiums on both policies until the premiums due for December 21, 2017. Shortly before that date, and unbeknownst to Scott Poe, Citibank froze his checking account.

22. On December 27, 2017, Northwestern Mutual sent Scott Poe a "Returned Payment Notice" for both policies advising that "[c]overage remains in force until the end of the grace period." For Policy No. 15874906, the notice stated a "Policy Paid to" date of December 21, 2017 and an "End of Grace Period" date of January 21, 2018. For Policy No. 16288790, the notice stated a "Policy Paid to" date of January 3, 2018 and an "End of Grace Period" date of February 3, 2018.

23. On January 24, 2018, Northwestern Mutual sent a notice to Scott Poe advising that his ISA account had been closed and that if payment was not received by the end of the grace period, the "non-payment provision becomes effective." This notice stated the same "Policy Paid to" and "End of Grace Period" dates as the December 27, 2017 notice.

24. On January 24, 2018, Northwestern Mutual also sent a notice to Scott Poe advising that the grace period for Policy No. 15874906 "expires on January 21, 2018 and the full protection under this policy terminates." It further advised that he could submit a payment without evidence of insurability if received by February 19, 2018.

25. On February 25, 2018, Northwestern Mutual sent Scott Poe two more notices on Policy No. 15874906 stating that the policy had lapsed and additional premium was due by March 21, 2018 to keep the policy in force.

26. On March 11, 2018, Northwestern Mutual sent Scott Poe two more notices on Policy No. 16288790 stating that the policy had lapsed and additional premium was due by April 3, 2018 to keep the policy in force.

27. These actions by Northwestern Mutal violated the Statutes. Northwestern Mutual did not provide a prospective 60-day grace period from the premium due date, did not mail notices of termination within 30 days of the premium due dates and/or at least 30 days before the termination dates, and it did not provide an annual notice of the right to change or make a designee for receiving the notice of termination.

6

28. Scott Poe died on April 29, 2018.

29. Plaintiff and her co-beneficiaries, Zachary Poe and Jacob Poe, consulted with an attorney who notified Northwestern Mutual of Scott Poe's death and inquired about its position that the policies had terminated prior to the date of Scott Poe's death.

30. After reviewing its records, Northwestern Mutual wrote a letter to the attorney confirming its position that the policies terminated before Scott Poe's death and advised that "no death claim is payable, and a claim package will not be provided at this time."

31. Given Northwestern Mutual's refusal to entertain a formal claim, Plaintiff took no further action.

32. Northwestern Mutual's failure to comply with Statutes means that the policies issued to Scott Poe remained in force through the date of his death and Northwestern Mutual's refusal to entertain any claim for death benefits under the policies breached the terms of the policies and the obligations superimposed on those terms by California law.

33. As a result of Northwestern Mutual's actions, Plaintiff has not received the benefits due her under the policies.

34. Zachary Poe and Jacob Poe filed an action against Northwestern Mutual and another defendant based on Northwestern Mutual's refusal to pay benefits to them under the two policies. *Zachary Poe, et al. v. Northwestern Mutal Life Insurance Company, et al.*, Orange County Superior Court Case No. 30-2019-011117036-CU-BC-CJC. In that case, Northwestern Mutual took the position that it was not required to comply with the Statutes because the policies were issued prior to 2013. In September of 2021, Zachary Poe and Jacob Poe filed a request for dismissal with prejudice and their case was subsequently dismissed. Plaintiff was not a party to that litigation.

# CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action on behalf of herself and all others similarly situated as a class action pursuant to Federal Rules of Civil Procedure Rule 23. Pursuant to Rule 23(b)(3) and 23(b)(2), Plaintiff seeks certification of the following class:

> All persons designated as beneficiaries under individual life insurance policies issued in California prior to January 1, 2013 by Northwestern Mutual Life Insurance Company that were terminated for nonpayment of a premium due on or after January 1, 2013 and where the deaths of the insureds occurred within four years of the filing of this action while the policies were in a terminated status.

36. Plaintiff and the class members reserve the right under Federal Rule of Civil Procedure Rule 23(c)(l)(C) to amend or modify the class to include greater specificity, by further division into subclasses, or by limitation to particular issues.

37. This action has been brought and may be properly maintained as a class action under the provisions of Federal Rules of Civil Procedure Rule 23 because it meets the requirements of Rule 23(a), Rule 23(b)(3), and Rule 23(b)(2).

### A. Numerosity.

38. The potential members of the proposed class as defined are so numerous that joinder of all the members of the proposed class is impracticable. While the precise number of proposed class members has not been determined at this time, Plaintiff is informed and believes that there are a substantial number of individuals who were beneficiaries under Northwestern Mutual policies issued before 2013 who have been similarly affected.

### B. Commonality.

39. Common questions of law and fact exist as to all members of the proposed class because the claims at issue arise out of Northwestern Mutual's uniform and systemic violation of the Statutes, as alleged herein

### C. Predominant questions of law or fact.

40. Questions of law or fact common to class members predominate over any questions affecting only individual members because Northwestern Mutual's liability for violating the Statutes is based upon its admitted non-compliance, as alleged herein.

### D. Typicality.

41. The claims of the named Plaintiff are typical of the claims of the proposed class. Plaintiff and all members of the class are similarly affected by Northwestern Mutual's wrongful conduct as described herein.

### E. Adequacy of representation.

42. Plaintiff will fairly and adequately represent and protect the interests of the members of the proposed class. Counsel who represents Plaintiff is competent and experienced in litigating large and complex class actions, including insurance class actions.

### F. Superiority of class action.

43. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the proposed class is not practicable, and common questions of law and fact exist as to all class members.

44. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

45. Northwestern Mutual has also acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

# FIRST CLAIM FOR RELIEF
# BREACH OF CONTRACT

46. Plaintiff and the class members repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

47. As alleged herein, Northwestern Mutual issued two term life policies on the life of Scott Poe, Policy No. 15874906 in the amount of $700,000 effective September 21, 2001 and Policy No. 16288790 in the amount of $400,000 effective November 3, 2002. Northwestern agreed to pay the amounts of these policies in the event of Scott Poe's death subject to the payment of premiums on their due dates.

48. By operation of the Statutes, these life insurance policies and all the individual life insurance policies issued by Northwestern Mutual in California prior to 2013 provided a 60-day grace period and required Northwestern Mutual to give notice of any termination for nonpayment of premium within 30 days of the premium due date and at least 30 days before the termination date, and to provide an annual notice of the right to change or make a designee for receiving any notice of termination.

49. Scott Poe paid the monthly premiums on both policies until the premiums due for December 21, 2017. Shortly before that date, and unbeknownst to Scott Poe, Citibank froze his checking account.

50. As alleged herein, when Scott Poe and all other insureds covered under individual life insurance polices issued by Northwestern Mutual in California prior to 2013 missed a premium payment due on or after January 1, 2013, Northwestern Mutual failed to comply with the Statutes. Northwestern Mutual did not provide a prospective 60-day grace period from the premium due date, did not mail notices of termination within 30 days of the premium due dates and/or at least 30 days before the termination dates, and it did not provide an annual notice of the right to change or make a designee for receiving the notice of termination.

51. Despite its non-compliance with the Statutes, Northwestern Mutual terminated the policies issued Scott Poe and other insureds covered under life

insurance polices issued by Northwestern Mutual in California prior to 2013 for nonpayment of premium.

52. When presented with death claims or inquiries regarding the status of such policies, Northwesterrn Mutual has affirmed its position that the policies terminated for nonpayment of premium as it did with respect to its position on Scott Poe's policies. Northwestern Mutual has also advised beneficiaries that it will not entertain claims under the policies given its position regarding the policies' terminated status.

53. Northwestern Mutual's failure to comply with the Statutes means that the policies could not be terminated for nonpayment of premium and its refusal to allow a claim to be made for the policies' benefits, and its attendant refusal to pay those benefits, breached the terms of the policies and the obligations superimposed on the policies' terms by California law.

54. As a proximate result of the systemic breach of the contracts issued to insureds such as Scott Poe, Plaintiff and beneficiaries like her have been deprived of policy benefits, and interest thereon, all to their damage in a sum to be proven at the time of trial.

55. Plaintiff requests attorney fees under Code of Civil Procedure section 1021.5, the substantial benefit doctrine and/or a common fund theory.

**SECOND CLAIM FOR RELIEF**
**DECLARATORY RELIEF**

56. Plaintiff and the class members repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

57. Under California Code of Civil Procedure section l060, "[a]ny person interested under a written instrument . . . who desires a declaration of his or her rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties . . .

11

including a determination of any question of construction or validity arising under the instrument or contract."

58. As alleged herein, an actual controversy exists in this case regarding Northwestern Mutual's contention that the Statutes do not apply to the life insurance policies it issued in California prior to 2013 and/or that its practices do not violate the notice requirements of the Statutes, assuming they apply. Plaintiff and the class members, on the other hand, contend that the Statutes apply to the life insurance policies issued by Northwestern Mutual in California prior to 2013 and that Northwestern Mutual's notice practices violate the Statutes' requirements.

59. Plaintiff and the class request a declaration regarding Northwestern Mutual's obligation to provide the notices required by the Statutes to policies issued in California prior to 2013 and that its practices have violated those requirements further obligating it to treat those polices as remaining in force and to pay the death benefits provided under those policies with respect to any deaths that have occurred within four years of the filing of this action.

60. Plaintiff requests attorney fees under Code of Civil Procedure section 1021.5, the substantial benefit doctrine and/or a common fund theory.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW

61. Plaintiff and the class members repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

62. Business and Professions Code section 17200 *et seq.*, the Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

63. Northwestern Mutual has violated the "unlawful" prong of the UCL by violating the Statutes, as alleged herein.

64. Northwestern Mutual has violated the "unfair" prong of UCL by

systematically and repeatedly breaching the terms of the life insurance policies, as amended by operation of law with respect to the Statutes, as alleged herein.

65. As a result of Northwestern Mutual's violations, Plaintiff has suffered injury in fact and has lost money or property, as Northwestern Mutual has refused to entertain or pay any claim for life insurance benefits under the policies issued on the life of Scott Poe.

66. On behalf of herself and on behalf of the general public, Plaintiff requests declaratory and injunctive relief as remedies to correct Northwestern Mutual's refusal to comply with the Statutes. Plaintiff requests that the Court order Northwestern Mutual to: a) conform its practices to the requirements of the Statutes; and b) re-process the termination of any policies for non-payment of premium due on or after January 1, 2013, return them to active status, determine and notify the beneficiaries that they have a claim for benefits for any death that has occurred, and pay the death benefits due.

67. Plaintiff requests attorney fees under Code of Civil Procedure section 1021.5, the substantial benefit doctrine and/or a common fund theory.

**Wherefore, Plaintiff prays for judgment against Northwestern Mutual as follows:**

1. Policy benefits and interest as described herein;
2. Declaratory relief and injunctive relief as described herein;
3. Attorney fees as described herein;
3. Costs of suit incurred herein; and
4. For such other and further relief as the Court deems just and proper.

DATED: December 16, 2021               GIANELLI & MORRIS

                                                   By: /s/ Adrian J. Barrio
                                                   ROBERT S. GIANELLI
                                                   JOSHUA S. DAVIS
                                                   ADRIAN J. BARRIO
                                                   Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

On behalf of herself and all class members, Plaintiff hereby demands a trial by jury on all issues triable to a jury.

DATED: December 16, 2021                GIANELLI & MORRIS

By: /s/ Adrian J. Barrio
ROBERT S. GIANELLI
JOSHUA S. DAVIS
ADRIAN J. BARRIO
Attorneys for Plaintiff